IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| WILLIAM ECHOLS, | ) | CASE NO. 1:17 CV 859 |
| | ) | |
| Petitioner, | ) | |
| | ) | JUDGE SARA LIOI |
| v. | ) | |
| | ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| BRIGHAM SLOAN, Warden, | ) | |
| | ) | |
| Respondent. | ) | **REPORT AND RECOMMENDATION** |

### INTRODUCTION

Petitioner William Echols, a prisoner in state custody, has filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging the constitutionality of his convictions and sentences in *State v. Echols*, Case No. CR-13-580261-A. (R. 1.) Respondent Warden Brigham Sloan[1] has filed a return of writ. (R. 9.) Echols has filed a traverse. (R. 12.) This matter is before the undersigned pursuant to Local Rule 72.2 for preparation of a report and recommendation on Echols' petition or other case-dispositive motions. For the reasons stated below, the court recommends Echols' petition be denied.

### FACTUAL BACKGROUND

Ohio's Eighth District Court of Appeals set forth the following facts underlying Echols' convictions:

> {¶ 3} On June 7, 1994, K.C. was walking home late at night from a session of braiding a friend's hair. As she passed a large willow tree or shrub somewhere near

---

[1] Brigham Sloan is the warden of the Lake Erie Correctional Institution in Conneaut, Ohio, where Echols is incarcerated. (R. 9 at 1.)

1

East 93rd Street and Woodland Avenue, a person jumped out from the tree and came up behind K.C. The individual held a knife to her throat and threatened her. He moved her from the sidewalk to behind the tree and raped her.

{¶ 4} The victim of a second attack, M.M., was unavailable to testify because she was murdered in 2007. Her medical records documented her recounting of events that occurred on May 8, 1999. In the course of her medical treatment she relayed that she had been raped. She was walking home when a car pulled up and an unknown individual told her to get into the car or he would hurt her. She complied. She was hit in the head with a brick and raped. She was taken to the hospital by ambulance where she was treated and a sexual assault examination was performed.

{¶ 5} Rape kits were collected from both victims and provided to Cleveland police. K.C.'s rape kit remained in the custody of Cleveland police until it was tested in 2012. M.M.'s rape kit was processed by forensic scientists in 1999, but a DNA profile was not developed at the time. In 2012, M.M.'s rape kit was processed and a DNA profile of her attacker was developed. Both DNA profiles resulted in matches to the same profile contained in a federal DNA database. As a result, investigators with the Ohio Bureau of Criminal Investigation interviewed K.C. and investigated the whereabouts of M.M. The investigators also obtained a sample of DNA from appellant, the individual whose DNA profile was returned as a possible match from the federal database. Two different forensic scientists testified that appellant's DNA profile was consistent with that of the attackers of M.M. and K.C., respectively. Both experts testified that appellant could not be excluded as the contributor of the DNA profile developed from the respective rape kits, and the probability of someone else being the contributor was one in 15 sextillion 610 quintillion.

*State v. Echols*, No. 102504, 2015 WL 8484088, at *1 (Ohio Ct. App. Dec. 10, 2015).

These facts "shall be presumed to be correct," and Echols has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

**PROCEDURAL BACKGROUND**

A.   **Trial Court**

On December 6, 2013, the Cuyahoga County Grand Jury indicted Echols on the following charges: two counts of rape in violation of Ohio Rev. Code § 2907.02(A)(2) and two counts of kidnapping in violation of Ohio Rev. Code § 2905.01(A)(4). (R. 9-1, Ex. 1.) Echols entered pleas of not guilty to all charges. (R. 9-1, Ex. 2.)

On October 6, 2014, Echols filed a motion requesting separate trials for charges relating to the two victims, K.C. and M.M. (R. 9-1, Ex. 3.) The State opposed the motion (R. 9-1, Ex. 4), and the trial court denied it. *Echols*, 2015 WL 8484088, at *2. The case proceeded to a jury trial on October 8, 2014. (R. 9-2 at 2.) On October 17, 2014, the jury found Echols guilty of all charges. (R. 9-1, Exs. 5, 6.)

On December 19, 2014, the trial court held a sentencing hearing. (R. 9-1, Ex. 7.) It sentenced Echols to eleven years imprisonment for the rape charge and ten years imprisonment for the kidnapping charge relating to victim K.C.; and ten years imprisonment each for the rape and kidnapping charges relating to victim M.M. (*Id.*) The sentences were to be served consecutively, for an aggregate sentence of forty-one years in prison. (*Id.*)

B.   **Direct Appeal**

On January 16, 2015, Echols, through new counsel, filed a timely notice of appeal to the Eighth District Court of Appeals. (R. 9-1, Ex. 8.) The court *sua sponte* struck his appellate brief because it failed to comply with a court rule prohibiting identification by name of victims of sexual assault. (R. 9-1, Ex. 9.) Echols then filed a replacement brief complying with the rule, which raised the following assignments of error:

3

> 1. The trial court erred in denying Appellant's motion for a separate trial, which resulted in prejudice to the Defendant and violated his constitutional right to a fair trial.
>
> 2. The trial court erred by admitting the medical records of M.M. in violation of Mr. Echols' Sixth Amendment right to confrontation and *Crawford*.
>
> 3. The evidence adduced at trial was insufficient as a matter of law to prove beyond a reasonable doubt Mr. Echols was guilty of rape and kidnapping as set forth in Counts Three and Four.
>
> 4. The trial court erred when it failed to find the rape and kidnapping offenses were allied offenses of similar import and merge them for sentencing purposes.

(R. 9-1, Ex. 11 (capitalization altered).)

On December 10, 2015, the Ohio appellate court affirmed in part and reversed in part the trial court's judgment. (R. 9-1, Ex. 12.) It affirmed Echols' convictions but found the trial court erred when it did not merge the kidnapping and rape counts relating to K.C., and remanded the case for execution of a new sentence. (R. 9-1, Ex. 12 at 95.)

On March 9, 2016, Echols, acting *pro se*, filed a notice of appeal of the December 2015 state appellate court's judgment and a motion for leave to file a delayed appeal in the Ohio Supreme Court. (R. 9-1, Exs. 19, 20.) The court denied Echols' motion for delayed appeal and dismissed the case on May 4, 2016. (R. 9-1, Ex. 21.)

**C.  Resentencing**

Meanwhile, on March 31, 2016, the trial court resentenced Echols in accordance with the state appellate court's instructions. (R. 9-1, Ex. 13.) It merged the kidnapping and rape counts relating to K.C. and imposed a sentence of eleven years imprisonment for the rape charge. (*Id.*) It resentenced Echols to ten years imprisonment each for the rape and kidnapping charges relating

4

to M.M. (*Id.*) All sentences were to be served consecutively, for a new aggregate sentence of thirty-one years in prison. (*Id.*)

A review of the state appellate court's docket indicates that Echols did not appeal that judgment. *See* http://cpdocket.cp.cuyahogacounty.us.

### D.     Post-Conviction Review

On June 1, 2015, Echols, again acting *pro se*, filed a petition to vacate or set aside his conviction or sentence in the trial court. (Doc. 9-1, Ex. 14.) In his petition, he raised the following claims:

> 1.  Ineffective assistance of counsel. . . . Counsel did not subpoena witnesses in time for trial, victim inconsistencies with statements.
>
> 2.  Ineffective assistance of counsel. . . . Trial counsel told me that it was a felony of the forth [*sic*] degree on the table and that the prosecutor was trying to figure out what to charge me with all the way up until trial, the deal was offered to me in July by my counsel and never seeing him againe [*sic*] until trial.

(R. 9-1, Ex. 14 (capitalization altered).) The State opposed the petition and filed proposed findings of fact and conclusions of law. (R. 9-1, Exs. 15, 16.)

The court denied Echols' petition on July 2, 2015. (R. 9-1, Ex. 17.) A review of the state appellate court's docket indicates that Echols did not appeal that judgment either. *See* http://cpdocket.cp.cuyahogacounty.us.

## FEDERAL HABEAS CORPUS

Echols filed the *pro se* petition for writ of habeas corpus now before this court on April 21, 2017. (R. 1.) He asserts the following grounds for relief:

5

1. The trial court erred by denying Petitioner's motion for a separate trial which resulted in prejudice to the Petitioner and violated his constitutional right to a fair trial.

2. The trial court erred by admitting the medical records of [M.M.] in violation of Petitioner's Sixth Amendment right to confrontation and *Crawford*[.]

3. The evidence adduced at trial was insufficient as a matter of law to prove beyond a reasonable doubt Petitioner was guilty of rape and kidnapping as set forth in count three and four[.]

4. The trial court erred when it failed to find the rape and kidnapping offenses were allied offenses of similar import and merge them for sentencing purposes[.]

(R. 1 at 5, 6, 8, 9.)

Respondent filed a Motion to Dismiss on August 3, 2017. (R. 9.) Echols filed a traverse on October 12, 2017. (R. 12.) The Honorable Judge Lioi construed Respondent's Motion to Dismiss as an answer to Echols' petition, or a return of writ, and ordered the undersigned to address the defenses and other issues presented in it, in due course.

## STANDARDS OF REVIEW

### A. AEDPA Review

Echols' petition for writ of habeas corpus is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), as it was filed after the Act's 1996 effective date. *Lindh v. Murphy*, 521 U.S. 320, 336 (1997); *Murphy v. Ohio*, 551 F.3d 485, 493 (6th Cir. 2009). The Act "recognizes a foundational principle of our federal system: State courts are adequate forums for the vindication of federal rights." *Burt v. Titlow*, 134 S. Ct. 10, 15 (2013). It therefore "erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Id.*

6

One of AEDPA's most significant limitations on district courts' authority to grant writs of habeas corpus is found in § 2254(d). That provision forbids a federal court from granting habeas relief with respect to a "claim that was adjudicated on the merits in State court proceedings" unless the state-court decision either:

1. resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

2. resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Habeas courts review the "last *explained* state-court judgment" on the federal claim at issue. *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991) (emphasis original). A state court has adjudicated a claim "on the merits," and AEDPA deference applies, regardless of whether the state court provided little or no reasoning at all for its decision. *Harrington v. Richter*, 562 U.S. 86, 99 (2011).

"Clearly established Federal law" for purposes of § 2254(d)(1) "is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). It includes "only the holdings, as opposed to the dicta, of [Supreme Court] decisions." *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (internal quotation marks and citations omitted). The state-court decision need not refer to relevant Supreme Court cases or even demonstrate an awareness of them; it is sufficient that the result and reasoning are consistent with Supreme Court precedent. *Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam). A state-court decision is contrary to "clearly established Federal law" under § 2254(d)(1) only "if the state court arrives at a conclusion opposite to that reached by [the

7

Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). In addition, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

A state-court decision is an "unreasonable determination of the facts" under § 2254(d)(2) only if the court made a "clear factual error." *Wiggins v. Smith*, 539 U.S. 510, 528-29 (2003). The petitioner bears the burden of rebutting the state court's factual findings "by clear and convincing evidence." *Burt*, 134 S. Ct. at 15; *see also Rice v. White*, 660 F.3d 242, 250 (6th Cir. 2011). This requirement mirrors the "presumption of correctness" AEDPA affords state-court factual determinations, which only can be overcome by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The Supreme Court has cautioned, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'" *Burt*, 134 S. Ct. at 15 (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)).

Indeed, the Supreme Court repeatedly has emphasized that § 2254(d), as amended by AEDPA, is an intentionally demanding standard, affording great deference to state-court adjudications of federal claims. A petitioner, therefore, "must show that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103. This is a very high standard, which the Court readily acknowledges: "If this standard is difficult to meet, that is because it is meant to be." *Id.* at 102.

8

### B. Exhaustion and Procedural Default

Under AEDPA, state prisoners must exhaust all possible state remedies, or have no remaining state remedies, before a federal court will review a petition for a writ of habeas corpus. 28 U.S.C. § 2254(b) and (c); *see also Rose v. Lundy*, 455 U.S. 509 (1982). This entails giving the state courts "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). In other words, "the highest court in the state in which the petitioner was convicted [must have] been given a full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990).

Procedural default is a related but distinct concept from exhaustion. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). Procedural default occurs when a habeas petitioner fails to obtain consideration of a federal constitutional claim by state courts because he failed to: (1) comply with a state procedural rule that prevented the state courts from reaching the merits of the petitioner's claim; or (2) fairly raise that claim before the state courts while state remedies were still available. *See, e.g., Wainwright v. Sykes*, 433 U.S. 72, 80, 84-87 (1977); *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982); *Williams*, 460 F.3d at 806. In determining procedural default, the federal court again looks to the last explained state-court judgment. *Ylst*, 501 U.S. at 805; *Combs v. Coyle*, 205 F.3d 269, 275 (6th Cir. 2000).

Where a state court declines to address a prisoner's federal claims because the prisoner has failed to meet a state procedural requirement, federal habeas review is barred as long as the state judgment rested on "independent and adequate" state procedural grounds. *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). To be independent, a state procedural rule and the state

9

courts' application of it must not rely in any part on federal law. *Id.* at 732-33. To be adequate, a state procedural rule must be "'firmly established' and 'regularly followed'" by the state courts at the time it was applied. *Beard v. Kindler*, 558 U.S. 53, 60-61 (2009).

A petitioner also may procedurally default a claim by failing to raise the claim in state court, and pursue the claim through the state's ordinary appellate review procedures, if, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim. *Williams*, 460 F.3d at 806 (quoting *O'Sullivan*, 526 U.S. at 848); *see also Baston v. Bagley*, 282 F. Supp. 2d 655, 661 (N.D. Ohio 2003) ("Issues not presented at each and every level [of the state courts] cannot be considered in a federal habeas corpus petition."). Under these circumstances, while the exhaustion requirement is technically satisfied because there are no longer any state-court remedies available to the petitioner, the petitioner's failure to have the federal claims fully considered in the state courts constitutes a procedural default of those claims, barring federal habeas review. *Williams*, 460 F.3d at 806.

Furthermore, to "fairly present" a claim to a state court, a petitioner must assert both its legal and factual basis. *Id*. (citing *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000)). Most importantly, a "'petitioner must present his claim to the state courts as a federal constitutional issue - not merely as an issue arising under state law.'" *Williams*, 460 F.3d at 806 (quoting *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984)).

A petitioner may overcome procedural default by demonstrating cause for the default and actual prejudice that resulted from the alleged violation of federal law, or that there will be a "fundamental miscarriage of justice" if the claim is not considered. *Coleman*, 501 U.S. at 750. "'[C]ause' under the cause and prejudice test must be something external to the petitioner,

10

something that cannot be fairly attributed to him." *Id*. "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Id*. "A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.'" *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986)).

  **C.**  **Cognizability**

To the extent that claims asserted in federal habeas petitions allege state-law violations, they are not cognizable on federal habeas review and should be dismissed on that basis. "It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991) (citing 28 U.S.C. § 2241); *see also Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law."); *Engle*, 456 U.S. at 121 n.21 ("We have long recognized that a 'mere error of state law' is not a denial of due process.") (citation omitted)).

State-court rulings on issues of state law may, however, "rise to the level of due process violations [if] they 'offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996)). But they must be "so egregious that [they] result in a denial of fundamental fairness." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). Fundamental fairness under the Due Process Clause is compromised where "the

11

action complained of . . . violates those 'fundamental conceptions of justice which lie at the base of our civil and political institutions,' . . . and which define 'the community's sense of fair play and decency.'" *Dowling v. United States*, 493 U.S. 342, 353 (1990) (internal citations omitted). The Supreme Court, therefore, "ha[s] defined the category of infractions that violate 'fundamental fairness' very narrowly." *Id*. at 352.

## ANALYSIS

Respondent argues that all of Echols' grounds for relief are procedurally defaulted because he did not fairly present them to the Ohio Supreme Court on direct review. (R. 9 at 8-11.) The court agrees.

As explained above, to exhaust claims in state courts and preserve them for federal habeas review, "the highest court in the state in which the petitioner was convicted [must have] been given a full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). Echols raised virtually identical claims in the state court of appeals as he does here. (*See* R. 9-1, Ex. 11.) But he did not file a timely appeal, from the state appellate court's judgment denying those claims, to the Ohio Supreme Court; and the Ohio high court denied his motion for a delayed appeal. (*See* R. 9-1, Exs. 19-21.) The Ohio Supreme Court's summary denial of a motion for delayed appeal is presumed to be a procedural ruling sufficient to bar federal habeas review. *Bonilla v. Hurley*, 370 F.3d 494, 497 (6th Cir. 2004) (per curiam).

Moreover, because Echols' habeas claims arise out of the record of proceedings in the trial court, Ohio's *res judicata* doctrine now prohibits Echols from raising the claims in any state

12

post-conviction proceeding. *See Wong v. Money,* 142 F.3d 313, 322 (6th Cir. 1998) ("Under Ohio law, the failure to raise on appeal a claim that appears on the face of the record constitutes a procedural default under the State's doctrine of res judicata."); *State v. Perry*, 10 Ohio St. 2d 175 (Ohio 1967) (holding that *res judicata* bars a criminal defendant from raising in post-conviction proceedings those claims that could have been raised on direct appeal). And with no state-court remedies still available to him, Echols has procedurally defaulted these claims. *See, e.g., Gray v. Netherland*, 518 U.S. 152, 161–62 (1996) ("Because the exhaustion requirement 'refers only to remedies still available at the time of the federal petition,' . . ., it is satisfied 'if it is clear that [the habeas petitioner's] claims are now procedurally barred under [state] law' . . . ." (internal citations omitted)); *Alley v. Bell*, 307 F.3d 380, 385 (6th Cir. 2002) ("[I]f an unexhausted claim would be procedurally barred under state law, that claim is procedurally defaulted for purposes of federal habeas review.").

Echols argues, with no evidentiary support, that his delayed appeal to the Ohio Supreme Court and the resulting procedural default was caused by his transfer to another prison, which prevented him from receiving a letter from his attorney informing him of the appellate court decision until February 2016. (R. 12 at 7.) District courts have rejected similar unsubstantiated claims that a prison transfer constituted cause to excuse a procedural default. *See, e.g., Rahe v. Jackson*, No. 2:09 CV 98, 2010 WL 3656049, at *1 (S.D. Ohio Sept. 15, 2010) (finding "nothing in the record" supported petitioner's allegation that a loss of legal materials during a prison transfer, among other things, established cause to excuse a procedural default); *United States v. Muniz*, No. 91 C 1583, 1992 WL 82496, at *3 (N.D. Ill. Apr. 20, 1992) ("Had Muniz attempted to buttress this assertion with evidence that prison transfers had indeed prevented him from

13

receiving notice of the June 12, 1990 minute order, he might well have established cause excusing his procedural default.").

Nevertheless, even if Echols had provided evidence that the prison transfer prevented him from receiving his counsel's correspondence, and established cause for the default, he still could not demonstrate prejudice. Echols acknowledged in his motion for delayed appeal in the Ohio Supreme Court that his case manager provided him a copy of the state appellate court's decision eight days after it was issued, on December 18, 2015. (R. 9-1, Ex. 20 at 134.) In *Smith v. Ohio Dep't of Rehab. & Corr.*, 463 F.3d 426 (6th Cir. 2006), the Sixth Circuit concluded that a habeas petitioner's appellate counsel's failure to inform him of a state appellate court's decision until three days before the deadline for filing an appeal of that decision constituted constitutionally deficient performance. *Id.* at 434-35. But it found no prejudice because the petitioner did not take action to appeal the decision until approximately five months after learning of the decision, well beyond the Ohio Supreme Court's forty-five-day appeal deadline. *Id*. at 435-36. The circuit court applied a:

> rebuttable presumption that if the period of time between when the defendant learned of the decision and when he or she attempted to appeal the decision is greater than the period allotted by state law for the timely filing of an appeal—here, forty-five days—the defendant fails to demonstrate that he or she "would have timely appealed" the decision but for the counsel's deficient failure to notify the defendant of the decision.

*Id*. at 435 ("In the absence of other circumstances hindering the defendant's ability to attempt to appeal the decision within this time frame, allowing a greater amount of time would generally bestow a windfall upon the defendant….").

Here, Echols admits he received notice of the state appellate court opinion eight days after it was issued, on December 18, 2015, leaving him thirty-seven days to perfect his appeal to the Ohio Supreme Court. He did not file his notice of appeal and motion for delayed appeal until March 9, 2016, eighty-two days later. Echols claimed in his delayed-appeal motion that he was further hampered in filing a timely appeal because the "inmate 'Law Clerks'" could not help him and he was forced to rely on "one of the inmates in the law library." (R. 9-1, Ex. 20 at 134.) However, just as there is no right to counsel beyond the first appeal of right, *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987), there is no constitutional right to the effective assistance of fellow prisoners. The Supreme Court has held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds v. Smith*, 430 U.S. 817 (1977). But the *Bounds* decision "did not create an abstract, freestanding right to a law library or legal assistance." *Lewis v. Casey*, 518 U.S. 343, 351 (1996). Furthermore, the Sixth Circuit repeatedly has rejected petitioners' attempts to fault their ignorance of the law or prison resources for failing to comply with procedural requirements for filing court pleadings. *See, e.g.*, *Bonilla,* 370 F.3d at 498 (finding a petitioner's *pro se* status, ignorance of the law and court procedural requirements, and limited time in a prison law library insufficient to excuse a procedural default). Echols, therefore, has failed to demonstrate that he "would have timely appealed" the decision but for the prison transfer, *Smith*, 463 F.3d at 435, and has not established cause and prejudice to excuse the procedural default of the claims he presents here.

15

Echols further contends that the default should be excused under the "fundamental miscarriage of justice," or "actual innocence," exception to the cause and prejudice requirement. (R. 12 at 7.) The Supreme Court has held that this "narrow exception" applies only where a constitutional violation has "probably resulted" in the conviction of one who is "actually innocent" of the substantive offense. *Dretke v. Haley*, 541 U.S. 386, 392 (2004). To demonstrate "actual innocence," a petitioner must show "'by clear and convincing evidence that, but for constitutional error, no reasonable juror would have found the petitioner [guilty] under the applicable state law.'" *Id*. (quoting *Sawyer v. Whitley*, 505 U.S. 333, 336 (1992)). The claim requires a showing of "new reliable evidence" and factual innocence, not mere legal insufficiency. *See Schulp v. Delo*, 513 U.S. 298, 324 (1995); *Bousley v. United States*, 523 U.S. 614, 623 (1998).

Echols presents no new evidence here to show he is actually innocent of the crimes for which he was convicted. This court finds, therefore, that each of Echols' claims is procedurally defaulted and recommends that the petition be denied on that basis.[2]

---

[2] In addition, Respondent argues (R. 9 at 16-17) that two of Echols' claims generally are not cognizable on federal habeas review: Ground One, regarding severance of the offenses, *see, e.g., Lamar v. Houk*, 798 F.3d 405, 428 (6th Cir. 2015) ("Misjoinder is unconstitutional only if it results in prejudice so great as to deny a defendant his due process right to a fair trial.") (citing *United States v. Lane*, 474 U.S. 438, 446 n.8 (1986)); and Ground Four, relating to sentencing, *see, e.g., Austin v. Jackson*, 213 F.3d 298, 300 (6th Cir. 2000) (observing that challenges to a state court's interpretation and application of state sentencing laws generally are not cognizable in federal habeas corpus). The court has not reached these alternative grounds, because it recommends dismissal based on procedural default.

**CONCLUSION AND RECOMMENDATION**

For the reasons stated above, the Court recommends that Petitioner William Echols' petition for writ of habeas corpus (R. 1) be denied in its entirety, because the claims raised are procedurally defaulted.

Date: October 22, 2018
       *s/ David A. Ruiz*
       David A. Ruiz
       United States Magistrate Judge

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).